J-S24024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IAN JARED NAKONECHNI | : | |
| | : | |
| Appellant | : | No. 1521 WDA 2024 |

Appeal from the Judgment of Sentence Entered April 24, 2024
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000145-2022

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:           **FILED: NOVEMBER 5, 2025**

Ian Jared Nakonechni appeals from the judgment of sentence entered following his convictions for aggravated assault (serious bodily injury), involuntary deviate sexual intercourse, sexual assault, indecent assault, terroristic threats, simple assault, and five counts of strangulation.[1] He challenges the sufficiency and weight of the evidence, the admission of evidence, and his sentence. We affirm.

Nakonechni's convictions stem from incidents with his then-girlfriend, Jamie Teagarden. The relevant events occurred in February 2022. The court summarized the evidence presented at the jury trial as follows:

> Ms. Teagarden had been in a prior "long distance" relationship with Mr. Nakonechni. Ms. Teagarden met Mr. Nakonechni at the bus station located in Pittsburgh,

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 3123(a)(1), 3124.1, 3126(a)(2), 2706(a)(1), 2701(a)(1), and 2718(a)(1), respectively.

Pennsylvania. Mr. Nakonechni had literally just been released on state parole for prior assaultive behavior of Felicia Baucum. [This information was not disclosed to the jury. However, the trial judge was aware of these facts as a result of pretrial rulings.] Ms. Teagarden testified that when she met Mr. Nakonechni at the bus station, Mr. Nakonechni almost immediately began to ask questions indicating his jealousy regarding whether Ms. Teagarden had been involved in any relationships during Mr. Nakonechni's lengthy incarceration.

During the time period of February 26, 2022 through February 28, 2022, Mr. Nakonechni and Ms. Teagarden spent time in a camper trailer located on the property, and near the home of Mr. Nakonechni's mother, Brenda McClellan. During that two or three day period [Nakonechni] and Ms. Teagarden used drugs together, and the sexual assault and physical assaults occurred in the camper trailer and in the basement of Mr. Nakonechni's mother's home. During the time of the assaults, Mr. Nakonechni broke Ms. Teagarden's ribs, nose, [and] orbital bone, [caused] a lip laceration and nasal laceration, and other facial fractures. Mr. Nakonechni sodomized her, and strangled and assaulted her multiple times during this timeframe. [Ms.] Teagarden testified that she was a drug addict and had at times acted as a prostitute to support her drug habit.

Ms. Teagarden testified that at some point during those days, she told Brenda McClellan, Mr. Nakonechni's mother, that [Nakonechni] was beating her. Ms. Teagarden and Ms. McClellan (along with [Nakonechni]) drove to a Sheetz store located in Waynesburg, Pennsylvania. The Court heard testimony and watched video evidence of [Nakonechni] and Ms. Teagarden at that Sheetz location.

Through a series of events, Ms. Teagarden separated from [Nakonechni]. Ms. Teagarden asked a customer in the Sheetz store to permit her to utilize a telephone, and she immediately contacted her father. The video depiction then showed Mr. Nakonechni at the Sheetz location and it would appear that he was frantically looking for Ms. Teagarden, and ultimately Ms. Teagarden's father appeared at the Sheetz and transported his daughter from that location back to Pittsburgh. The video depiction showed Mr. Nakonechni chasing the Teagarden vehicle.

At the time of the state police interview of Ms. Teagarden, she was in Allegheny General Hospital being treated for her injuries, which were severe in nature.

Charges were filed against Mr. Nakonechni based on Ms. Teagarden's report to the police. At some time after [Nakonechni] was incarcerated[,] Ms. Teagarden went to the office of Timothy Ross [Nakonechi's attorney at that time] and signed a statement that recanted an earlier statement and in that signed statement Ms. Teagarden said that she was injured in Pittsburgh by two men during a time when she was acting as a prostitute. Later Ms. Teagarden advised the Commonwealth that her statement to Mr. Ross was false and she went to Mr. Ross to sign the statement at the urging of Mr. Nakonech[n]i. . . .

Ms. Felicia Baucum, the 404(b) witness, testified that several years before and in the exact same camper trailer on Falling Timer Road, that Mr. Nakonechni engaged in nearly identical behavior. In the Baucum case, Mr. Nakonechni entered guilty pleas to the physical assault of Ms. Baucum. Sexual assault charges were withdrawn in that case as part of a negotiated plea agreement.

Opinion and Order, filed 11/8/24, at 4-6 (footnotes omitted).[2]

The Commonwealth also presented testimony from Dr. Veronique Valliere, who testified as an expert witness in clinical and forensic psychology. Before trial, Nakonechni filed a motion *in limine* asking the court to preclude Dr. Valliere from testifying about her work on the Sexual Offender Assessment Board (SOAB). **See** Defendant's Motion *in Limine*, filed 10/5/23. The court denied the motion.

Dr. Valliere gave generalized testimony about sexual abuse, domestic violence, and the relationship dynamics between victims and offenders. Dr.

_____

[2] The court relies on this opinion in lieu of a Rule 1925(a) opinion. **See** Statement Pursuant to Pa.R.A.P. 1925, filed 1/2/25.

Valliere testified that she worked on the "Megan's Law board for the sexually violent predators" and within that role she assists the court with determining "what diagnoses help people match a sexually violent predator." N.T., Trial, 10/25/23, at 22. She explained to the jury that she had no knowledge of Nakonechni, Teagarden, or the case. She did not give an opinion as to the credibility of the witnesses in the case or the particular facts of the case.

The jury found Nakonechni guilty of the above offenses. At the sentencing hearing, the court inquired whether the Commonwealth provided notice to Nakonechni of its intention to seek mandatory minimum sentences, pursuant to Section 9714. *See* 42 Pa.C.S.A. § 9714. The Commonwealth explained that during plea negotiations it gave notice to Nakonechni's previous counsel "that the Commonwealth would be seeking the second strike mandatories on these cases, and I detailed the counts and what those mandatories would be." N.T., Sentencing Hearing, 4/24/24, at 16. It went on to detail the specifics of those mandatories and then stated, "that is what the Commonwealth is seeking for sentencing today, Judge." *Id.* at 16-17. The Commonwealth also presented the court with an email sent to Nakonechni's previous counsel regarding its intention to seek the mandatory minimums, which the court admitted into the record. *See id.* at 19; Commonwealth's Exhibit 1, dated 8/31/22. The court asked defense counsel if he was "aware that that is what they are seeking" and counsel replied "I was aware when I got the file, as a matter of fact." *Id.* at 17. Counsel argued that Section 9714 requires notice to be given "after conviction." *Id.* at 21. The Commonwealth

- 4 -

maintained that it gave reasonable notice and cited ***Commonwealth v. Norris***, 819 A.2d 568 (Pa.Super. 2003) and ***Commonwealth v. Bell***, 645 A.2d 211, 218 (Pa. 1994). N.T., Sentencing Hearing, 4/24/24, at 23.

The court determined that the Commonwealth provided reasonable notice to Nakonechni "via counsel" and satisfied the requirements of Section 9714. ***Id.*** at 25. It sentenced Nakonechni to an aggregate term of 60 to 120 years, followed by a consecutive term of three years reporting probation. Nakonechni filed a post-sentence motion challenging the weight and sufficiency of the evidence. He also claimed that his sentence was illegal because the Commonwealth failed to give adequate notice that it would seek the second-strike mandatory minimums for his crimes. The court denied the motion, and this timely appeal followed.

Nakonechni raised the following issues:

1. Did the Commonwealth present sufficient evidence to support any or all of [Nakonechni's] convictions?

2. Did the trial court err in denying a motion for new trial wherein it was asserted that the jury did not give the proper weight to the evidence presented in that

   a. The jury did not give sufficient weight to the hand-written and verified recantation of the victim; in that, the jury heard from the victim that the writing was hers, that the same was not coerced, and that she created the statement voluntarily and of her own free will; and

   b. The victim told three different versions of the alleged abuse in her testimony?

3. Did the trial court err in permitting the jury to hear the Commonwealth Expert's work with the Pennsylvania

State Sex Offender's Board and that the same unfairly prejudiced [Nakonechni]?

4. Did the trial court err in permitting the jury to hear the Commonwealth's Expert opine on behavior of an abused individual, thus usurping the jury's duty to weigh the facts and evidence of the case and make its own decision on credibility of the victim?

5. Did the trial court err in permitting Rule 404(b) character evidence, showing a pattern of conduct and unfairly prejudicing [Nakonechni]?

6. Did the trial court err in sentencing [Nakonechni] to mandatory minimums imposed under Pennsylvania's domestic violence enhancement without proper notice to [Nakonechni]?

Nakonechni's Br. at 11-12 (suggested answers omitted).

**SUFFICIENCY OF THE EVIDENCE**

Nakonechni claims that for each of his convictions, the Commonwealth failed to present sufficient evidence for any of the elements of the crimes. He argues that the only evidence supporting the charges was the victim's testimony, but claims that "the victim contradicted herself and outright admitted lying." Nakonechni's Br. at 27. He also points out that he denied causing her injuries, the victim informed other witnesses that Nakonechni had not caused her injuries, and that despite "later implicat[ing] [Nakonechni]," the victim recanted her story. *Id.* at 28.

Nakonechi's sufficiency arguments go to weight and credibility, not sufficiency. They are therefore inadequate to demonstrate that the evidence was insufficient. Furthermore, he waived his sufficiency claim by failing to

identify in his Rule 1925(b) statement the element or elements of particular crimes that he believes were unsupported.

"[T]o preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Pa.R.A.P.] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Ellison*, 213 A.3d 312, 320-21 (Pa.Super. 2019) (citation omitted). This is of great importance when the appellant has been "convicted of multiple crimes of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* at 321 (citation omitted). Failure to specify the elements that have not been proven results in waiver of a sufficiency claim. *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa.Super. 2015). However, we may look beyond the Rule 1925(b) statement to determine if an issue is properly preserved when "the [1925(b)] statement adequately apprised the trial judge of the nature of the claim." *Commonwealth v. Price*, 284 A.3d 165, 172 n. 5 (Pa. 2022); *see also Commonwealth v. Rogers*, 250 A.3d 1209, 1224-25 (Pa. 2021) (concluding Superior Court erred in determining that appellant waived weight challenge due to vague Rule 1925(b) statement, where "weight-of-the-evidence claim was readily understandable from context" of record including appellant's post-sentence motion).

Nakonechni's Rule 1925(b) statement states, "The defendant is challenging the sufficiency of the evidence to support any or all of the defendant's convictions and the weight of the evidence to support any or all

of the defendant's convictions." Pa.R.A.P. 1925(b) statement, filed 12/30/24, at ¶ 1. His post-sentence motion presents the same identical issue. *See* Post-Sentence Motion, filed 5/6/24, at ¶ 4. As presented, Nakonechni's 1925(b) and post-sentence motion both fail to "specify the elements or elements upon when the evidence was insufficient," and as such the claim is waived. *Tyack*, 128 A.3d at 260 (citation omitted).

**WEIGHT OF THE EVIDENCE**

Nakonechni maintains that the court erred in denying his motion for a new trial because the verdict was against the weight of the evidence. He points out that the victim recanted her testimony and testified about three different versions of the assaults. Nakonechni claims that the victim's testimony "was vague, wholly unreliable" and "[t]he factfinder could not have offered any serious consideration" to her varying stories or believed that a version of the stories told was true. Nakonechni's Br. at 29, 30.

Our standard of review for a challenge to the weight of the evidence is settled:

> "When reviewing a challenge to the weight of the evidence, we review 'the trial court's exercise of discretion.'" ***Commonwealth v. Roane***, 204 A.3d 998, 1001 (Pa.Super. 2019) (quoting ***Commonwealth v. Johnson***, 192 A.3d 1149, 1152-53 (Pa.Super. 2018)). A trial court may sustain a weight challenge only if the verdict "'is so contrary to the evidence as to shock one's sense of justice.'" ***Id.*** (quoting ***Johnson***, 192 A.3d at 1153). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." ***Id.*** (quoting ***Commonwealth v. Cramer***, 195 A.3d 594, 600 (Pa.Super. 2018). We defer

to the trial court's decision regarding a weight of the evidence claim because it "had the opportunity to hear and see the evidence presented." *Id.* (quoting *Cramer*, 1925 A.3d at 600).

*Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa.Super. 2020).

The court did not abuse its discretion in denying the weight claim. Despite Nakonechni's description of the victim's testimony as vague and unreliable, the jury sitting as fact-finder was free to determine her credibility and give it the proper weight. *See id.*; *Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa.Super. 2021) (citation omitted) ("A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses").

## ADMISSION OF EVIDENCE – EXPERT TESTIMONY

Nakonechni maintains that the court erred in permitting the jury to hear Dr. Valliere's work experience with the SOAB board. He claims this testimony was prejudicial and "the jury would naturally believe [Nakonechni] would be a person" who fits within the category of someone convicted of sexual offenses. Nakonechni's Br. at 31. He also claims this testimony was impermissible because "it can be an inferred commentary on the witness['] credibility or [Nakonechni's] guilt." *Id.*

We review the admission of evidence for an abuse of discretion. *See Commonwealth v. Cramer*, 195 A.3d 594, 605 (Pa.Super. 2018).

Rule 702 of the Pennsylvania Rules of Evidence governs the testimony of expert witnesses. An expert "may testify in the form of an opinion or otherwise," when the expert has "scientific, technical, or other specialized

knowledge" that is beyond that of an average layperson, the testimony will help the fact-finder "understand the evidence or determine a fact in issue," and the expert uses a "methodology [that] is generally accepted in the relevant field." Pa.R.E. 702.

Additionally, in the trial of certain offenses, including sex crimes, a witness may be qualified as an expert if the witness has specialized knowledge "beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, sexual violence or domestic violence[.]" 42 Pa.C.S.A. § 5920(b)(1). Such testimony is permissible where it will assist the fact-finder "in understanding the dynamics of sexual violence or domestic violence, victim responses to sexual violence or domestic violence and the impact of sexual violence or domestic violence on victims during and after being assaulted." *Id.* An expert with this specialized knowledge "may testify to facts and opinions regarding specific types of victim responses and victim behaviors." *Id.* at § 5920(b)(2).

Nakonechni's claim is meritless. The trial court determined that Dr. Valliere's experience with the SOAB board "inform[ed] her experience" as it relates to Section 5920(b)(1). Opinion and Order at 11. Such testimony was relevant and proper to explain in part the basis for Dr. Valliere's opinion testimony about victim responses and victim/offender dynamics. Nakonechni speculates that by hearing Dr. Valliere's experience with the SOAB board, the jury would believe that Nakonechni is a person who might commit sex crimes.

However, Dr. Valliere gave only generalized testimony responses to domestic and sexual violence and gave no testimony about Nakonechni. She even clarified that she had no knowledge about him or the facts of this case. The court did not abuse its discretion in permitting the jury to hear Dr. Valliere's experience.

Nakonechni also claims the trial court erred in permitting Dr. Valliere to testify about the behavior of an abused individual. He argues that "Dr. [Valliere] equivocated the characteristics of sexual assault victims and those who recant those allegations with the characteristics of the victim." Nakonechni's Br. at 33. He points out that when speaking about recantation testimony, Dr. Valliere explained that "usually, in this situation, it means, sort of taking back what's true." *Id.* Nakonechni argues that this reference to recantation testimony "relates specifically to the 'hypothetical' victim's capacity for truthfulness" and "links that hypothetical victim to the class of victims of which the instant victim belongs." *Id.* He claims this testimony was improper because it "removed the jury's ability to weigh evidence and make their own determinations of credibility, uninfluenced by improper expert testimony." *Id.*

Once the court accepted Dr. Valliere as an expert witness, counsel did not object to Dr. Valliere's testimony. *See* N.T., Trial,, at 26-36. Thus, any challenge to the testimony is waived for failure to raise a contemporaneous objection. *See Commonwealth v. Molina*, 33 A.3d 51, 55 (Pa.Super. 2011) (*en banc*) (citation omitted) ("a defendant's failure to object to allegedly

- 11 -

improper testimony at the appropriate stage in the questions of the witness constitutes waiver"). Moreover, even if the issue were not waived, it would be meritless. Dr. Valliere testified within the confines of Section 5920. Her testimony was limited to her specialized knowledge of sexual and domestic violence and the responses of victims who experience such violence. Dr. Valliere did not give an opinion regarding the credibility of any witnesses, thus leaving the jury, as fact-finder, to make its own credibility determinations. Moreover, when asked, "What does the term recantation mean to you?," Dr. Valliere explained her understanding of the term, her experience with victims of domestic violence recanting, and the various reasons for recanting. **See** N.T., Trial, at 34. Notably, she did not offer an opinion on the victim's recantation in the instant case and, again, she testified that she had no knowledge about the particular facts of the case. **See id.** at 26-27 (Dr. Valliere testifying "I don't really know anything about the case at hand"; "I have never interviewed anybody, I haven't reviewed anything. I'm just here to talk generally about the issues the attorneys may have"). The court did not abuse its discretion. **See Cramer**, 195 A.3d at 608 (concluding that Dr. Valliere's testimony did not amount to bolstering of victim's credibility where she "complied with Section 5920 by responding to the Commonwealth's general questions, she did not know the facts of the case before she testified, and she did not offer an opinion about the credibility of the [v]ictim or whether the [v]ictim responded 'normally'").

**ADMISSION OF EVIDENCE – RULE 404**

Nakonechni claims that the court should have excluded Baucum's testimony because it was unfairly prejudicial and did not meet any exception to Rule 404 of the Pennsylvania Rules of Evidence. He also maintains that there was no connection between Baucum and the victim. He claims that Baucum's testimony was "vague and often-times inaudible" causing the jury to "heavily rely on the prior convictions of a prior assault against a separate individual." Nakonechni's Br. at 38.

Generally, evidence of prior bad acts is inadmissible to show that in committing a crime, the defendant "acted in accordance with the character" demonstrated by the prior bad acts. Pa.R.E. 404(b)(1). However, prior bad acts may be admissible for other, proper purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Such evidence is only admissible when the probative value of the evidence outweighs the potential unfair prejudice from its admission. ***Id.***

Baucum's testimony regarding the prior assaults was admissible to establish the identity of the perpetrator and absence of mistake or accident. Similar to the abuse of the instant victim, Nakonechi's abuse of Baucum occurred in his camper trailer on his mother's property over a period of days. Additionally, his attacks on both women involved both domestic and sexual abuse. Moreover, any potential unfair prejudice was cured by the court's limiting instruction, which it gave prior to Baucum testifying. The court

- 13 -

explained to the jury that it could only consider the testimony for the limited purpose of "proving motive, opportunity, intent, preparation, plan, knowledge, identi[t]y, or an absentative mistake, or common scheme plan or design." N.T., Trial, at 105. The court properly exercised its discretion in permitting this testimony.

**SENTENCING**

Nakonechni claims that the trial court erroneously imposed mandatory minimum sentences for second and subsequent convictions of violent crimes. He argues that the Commonwealth failed to provide notice of its intent to seek the mandatory minimums "after conviction and before sentencing." Nakonechni's Br. at 39 (citing 42 Pa.C.S.A. § 9714(d)) (emphasis removed). Rather, he maintains that it gave its notice "prior to trial," which Nakonechni argues was insufficient and did not satisfy Section 9714(d). *Id.* (emphasis removed). He further claims that "[t]he Commonwealth's notice came *at* sentencing" and this was also insufficient. *Id.* at 40 (emphasis in original). Nakonechni claims Section 9714 mandates notice "after sentencing so that the Defendant can investigate or challenge whether the prior offense qualifies as such." *Id.*

For its part, the Commonwealth alleges that it "notified [Nakonechni] multiple times[.]" Commonwealth's Br. at 33. It maintains that it first notified Nakonechni that it would be seeking the mandatory minimum sentences during plea negotiations, "a year and two months before his trial." *Id.* The Commonwealth claims that it then informed Nakonechni a second time of its

intent to seek the mandatory minimum sentence "at the outset of the April 24, 2024 sentencing hearing[.]" *Id.* at 33-34 (citing N.T., Sentencing Hearing, at 16). Thus, the Commonwealth argues that it "went above and beyond what the statute requires" and notes that Section 9714 "indicates that the minimal requirement is that notice be provided between conviction and the imposition of sentence." *Id.* at 33. It alleges "[t]he notice provided in this case is consistent with what is required under *Commonwealth v. Norris*, 819 A.2d 568 (Pa.Super. 2003)." Commonwealth's Br.at 34.

Section 9714(d) provides that when the Commonwealth wishes to request a mandatory sentence, "notice thereof to the defendant *shall not be required prior to conviction*, but reasonable notice of the Commonwealth's intent to proceed under this section shall be provided after conviction and before sentencing." 42 Pa.C.S.A. § 9714(d) (emphasis added).

We find *Norris* dispositive to the instant case. There, we addressed whether the Commonwealth gave sufficient notice pursuant to Section 9714. The Commonwealth notified the defendant on three separate occasions that it was seeking mandatory minimum sentences. First, before Norris's conviction, the Commonwealth noted in its written bill of information that if the case went to trial it would seek mandatory minimum sentences. *Norris*, 819 A.2d at 575. Then, after conviction but before sentencing, the Commonwealth "verbally indicated on the record at the sentencing hearing its intent to pursue a mandatory sentence under [S]ection 9714." *Id.* Finally, it notified counsel the day before the sentencing hearing. *Id.* This Court concluded that the

Commonwealth's prior notice in the bill of information was not "insufficient, unreasonable, or misleading" when also considering the other instances of notice given. *Id.* The same can be said for the instant case.

Here, as Nakonechni concedes, the Commonwealth gave notice before his conviction and at sentencing. Although he claims both instances of notice were insufficient, we conclude the initial notice to Nakonechni's prior counsel coupled with the Commonwealth's verbal indication on the record at the sentencing hearing of its intent to seek a mandatory minimum sentence, amounted to "reasonable notice" under Section 9714. *See* N.T., Sentencing Hearing at 16 (Commonwealth stating that mandatory minimum "is what the Commonwealth is seeking for sentencing **today**, Judge") (emphasis added); *Norris*, 819 A.2d at 575; *Bell*, 645 A.2d at 218 (finding harmless error where Commonwealth gave notice "earlier than is required by [drug trafficking] statute" by notifying defendant's counsel before trial that it would seek the mandatory minimum if case went to trial and statute read "[n]otice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/5/2025